IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | Case No. 1:22-cv-0094<br><br>Hon. James E. Boasberg |

### DEFENDANTS' RESPONSE TO AMICUS BRIEF

In their *amicus curiae* brief opposing entry of the proposed Consent Decree that would resolve the merits of this case (ECF 24, Ex. A), the Local Government Coalition for Renewable Energy ("Coalition") has misinformed the Court regarding two important points of law. First, the Coalition is mistaken when it argues that a residual risk review under 42 U.S.C. §§ 7412(f) and 7429(h)(3) ("Residual Risk Review") is a component of, much less a prerequisite for, EPA's review of the existing performance standards for solid waste incinerators (including large municipal waste combustors) under 42 U.S.C. § 7429(a)(5).[1] Second, the Coalition is mistaken when it argues that the Court may modify the Consent Decree for any purpose. Defendants the United States Environmental Protection Agency and Michael S. Regan in his official capacity as

---

[1] The Coalition's members comprise municipal entities, many of which operate municipal waste combustors referred to in the *amicus* brief as "waste-to-energy" facilities or "WTEs," that may be subject to the standards for which the Consent Decree establishes review deadlines under 42 U.S.C. § 7429(a)(5).

Administrator of that Agency (collectively "EPA") therefore respond as follows to ensure that the Court is properly informed regarding these issues.[2]

## I. Residual Risk Reviews Are Distinct Statutory Obligations from the One at Issue in This Case.

In some places the Coalition's *amicus* brief erroneously conflates—and in other places it reverses the order of performance of—the process for establishing and reviewing at five-year intervals technology-based performance standards based on the maximum achievable control technologies ("MACT Technology Standards") for each category of pollution sources under 42 U.S.C. § 7429, and the separate Residual Risk Review process for evaluating any *residual* risk that might be posed by that source category under 42 U.S.C. §§ 7412(f) and 7429(h)(3).  More specifically, the arguments in the *amicus* brief are flawed because they are based on the false premise that the Residual Risk Review—which is primarily a toxicological and human health inquiry—either should be performed before MACT Technology Standards are established, or instead is an integral part of establishing the MACT Technology Standards themselves.  Instead, the two processes are separate, and the statute does not impose any such sequencing of these duties upon EPA.

The Clean Air Act ("CAA") requires EPA to promulgate performance standards for certain solid waste incinerators including large municipal waste combustors ("MWC"), among other categories of pollution sources, under 42 U.S.C. § 7429.  The Act further requires EPA to review and, if appropriate, revise MACT Technology Standards every five years ("Five-Year Review").  *Id.* § 7429(a)(5).  EPA initially promulgated MACT Technology standards for large MWCs in 1995 ("MWC Standards"), 60 Fed. Reg. 65387 (Dec. 19, 1995), and revised the MWC

---

[2]  Counsel for EPA consulted with counsel for Plaintiffs, and Plaintiffs do not oppose this motion.

Standards in 2006, 71 Fed. Reg. 27324 (May 10, 2006).  EPA therefore was required to review, and if appropriate revise, the MWC Standards five years after May 2006.

EPA acknowledges that, while it is diligently conducting such a review, it has not yet completed it.  Plaintiffs East Yard Communities for Environmental Justice *et al.* ("East Yard") brought this Clean Air Act citizen suit seeking court-ordered deadlines by which the Agency must perform that five-year review.  ECF 1.  By establishing those deadlines, the Consent Decree will fully resolve the merits of this case.  *See Sierra Club v. Browner,* 130 F. Supp. 2d 78, 90 (D.D.C. 2001); *N.Y. Pub. Interest Law Group, Inc. v. Whitman,* 214 F. Supp. 2d 1, 2-4 (D.D.C. 2002).

Separately, the Act directs EPA to conduct a Residual Risk Review to evaluate whether revision of MACT standards is necessary to "provide an ample margin of safety to protect public health."  40 U.S.C. §§ 7412(f), 7429(h)(3).  While a Five-Year Review and a Residual Risk Review could be performed within the same time frame, the D.C. Circuit found that these reviews are "distinct, parallel analyses" that EPA undertakes "[s]eparately" in an analogous situation where EPA periodically reviews, and if necessary revises, National Emissions Standards for Hazardous Pollutants (which include MACT Technology Standards) under 42 U.S.C. § 7412(d)(6).  *Nat'l Ass'n for Surface Fishing v. EPA*, 795 F.3d 1, 5 (D.C. Cir. 2015).  As with the MWC Standards at issue in this case, the Clean Air Act directs EPA to review the residual risk remaining after implementation of MACT Technology Standards promulgated under § 7412 if required by subsection (f)(2).  The holding in *National Association for Surface Fishing*—that the duties to periodically revise MACT standards and perform Residual Risk Reviews are separate and distinct—applies with equal force in this case.

3

The Coalition also misstates EPA's position with respect to the relationship between the Five-Year Review and the Residual Risk Review under 42 U.S.C. § 7429.  The Coalition seeks to portray two statements in proposed rules issued in 2006 and 2007 as an EPA "position" that Five-Year Reviews should be informed by Residual Risk Reviews.  Instead, while EPA *can* consider the results of a Residual Risk Assessment when conducting a Five-Year Review, it is not required.  For example, EPA recently issued a final rule pursuant to 42 U.S.C. § 7412 which found an ample margin of safety under the Residual Risk Review, but nonetheless determined that the standards needed to be updated under the Five-Year Review due to technological developments.  86 Fed. Reg. 66045 (Nov. 19, 2021).

## II.     Courts Cannot Revise Consent Decrees over the Parties' Objection.

The *amicus* brief also misinforms the Court where it argues that the Consent Decree could be revised prior to entry.  The federal courts are not empowered to revise consent decrees over the signatories' objection prior to entering them.  It is well established that consent decrees are essentially contracts "entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Int'l Brotherhood of Teamsters, Chauffeurs and Warehousemen*, 998 F.2d 1101, 1106 (2d Cir. 1993) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) and citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 (1975)).  By entering into a consent decree, "parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense and inevitable risk of litigation" but "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987) (quoting *Armour*, 402 U.S. at 681-82).

In this case, only one obligation and one potential remedy are at issue: the obligation to review and, if appropriate, revise the MWC Standards under 42 U.S.C. § 7429(a)(5), and a court-ordered deadline by which EPA must do so. EPA and East Yard each obtained certainty and eliminated litigation risk by entering into the Consent Decree, but they did so at significant cost. East Yard gave up the possibility of obtaining an even shorter schedule, while EPA gave up the possibility of obtaining a longer one that is more consistent with the Agency's resources and with its need to balance competing priorities that have their own judicial and non-discretionary statutory deadlines. *See Sierra Club v. Browner,* 130 F. Supp. 2d at 90; *N.Y. Pub. Interest Law Group, Inc.,* 214 F. Supp. 2d at 2-4. Moreover, if the obligation to perform a Residual Risk Review for large MWCs were at issue in this case—which it is not—EPA simply could not have agreed to fulfill it by the deadlines in the Consent Decree.[3] The *amicus* brief therefore misinforms the Court where it argues that the Consent Decree can be revised prior to entry over EPA's and East Yard's objection, particularly to obligate EPA to perform a Residual Risk Review that is not even at issue in this case.

## CONCLUSION

For the foregoing reasons and those in the Parties' Joint Motion to Enter Consent Decree, ECF 24, the Consent Decree should be entered.

---

[3] EPA notes that a separate CAA citizen suit is pending in the U.S. District Court for the District of Columbia in which a different organization, the Waste-to-Energy Association, seeks a court-ordered deadline by which EPA must perform that Residual Risk Review. *See Waste-to-Energy Assoc. v. EPA*, Case No. 23-cv-2726 (D.D.C.).

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

Dated: October 20, 2023

   /s/ Heather E. Gange
HEATHER E. GANGE
D.C. Bar No. 452615
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 514-4206
Fax: (202) 514-8865
Heather.Gange@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October, 2023, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on counsel for all parties in this matter

                                            /s/ Heather E. Gange